UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X
OTVINO BARTSCH,

        Petitioner,

        v.

UNITED STATES OF AMERICA,

        Respondent.
------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ JUL 30 2009 ★
BROOKLYN OFFICE

08 CV 1549 (SJ)

MEMORANDUM
AND ORDER

APPEARANCES

OTVINO BARTSCH, *PRO SE*
73645-053
1 Cornell Drive
Philipsburg, PA 16866

UNITED STATES ATTORNEY
Benton J. Campbell
271 Cadman Plaza East
Brooklyn, NY 11201
By:   Jason Allen Jones

JOHNSON, Senior District Judge:

    Pursuant to 28 U.S.C. § 2255 ("Section 2255"), petitioner Otvino Bartsch ("Petitioner" or "Bartsch") requests that the Court lower his sentence because of two alleged violations (the "Petition"). First, Bartsch argues that his rights were violated under the Vienna Convention on Consular Relations, Apr. 24, 1963, 21

1

U.S.T. 77, 596 U.N.T.S. 261 ("Vienna Convention"). Second, Bartsch argues that he received ineffective assistance of counsel. For the following reasons, the Petition is DENIED in its entirety.

I. Background

Petitioner was first arrested on January 3, 1997 for facilitating the sale of cocaine to an undercover police officer. (Presentence Investigation Report ("PSR") ¶ 20.) He pled guilty in New York State court and was sentenced on March 6, 1997 to three years of probation. (Id. at ¶ 22.) Before the successful completion of his probation, however, Petitioner was again arrested for selling cocaine to an undercover police officer on February 25, 1998, for which he was sentenced on October 16, 1998 to three years in custody. (Id. at ¶¶ 23-24.) On July 20, 1998, he was arrested again for attempting to sell cocaine to an undercover officer, for which he was sentenced on November 23, 1998 to one year in custody. (Id. at ¶¶ 27-28.)

On August 11, 1999, Petitioner was deported. (Id. at ¶ 3.) Although his deportation meant that he could not return to the United States without the permission of the Attorney General, he nevertheless returned illegally and was again deported on April 27, 2001. (Id.) He was never criminally prosecuted for this first illegal re-entry. (Id.)

In 2005, Immigration and Customs Enforcement ("ICE") officials learned that Petitioner had, for the second time, re-entered the United States without the

P-049

permission of the Attorney General. (Id. at ¶ 2.) On October 6, 2005, Petitioner was arrested by ICE agents in Queens, New York. (Id. at ¶ 4.) On November 22, 2005, he pled guilty to one count of illegal re-entry into the United States after being convicted of an aggravated felony and deported, in violation of 28 U.S.C. § 1326(a) and (b)(2). (Id. at ¶ 1.)

The Probation Department recommended that Petitioner's total offense level be increased sixteen levels, pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i), because he had previously been deported after conviction for a drug-trafficking offense for which he received a sentence greater than thirteen months. (Id. at ¶ 10.) Petitioner's total offense level was therefore calculated to be 21, (id. at ¶ 16), his Criminal History was deemed to be III, (id. at ¶ 30), and his Guideline range 46 to 57 months. (Id. at ¶ 61.)

At sentencing on June 15, 2006, Petitioner's defense counsel argued for a below-Guideline sentence based on Petitioner's family circumstances and unwarranted sentencing disparities between this District and districts that have "fast track" programs for deportable defendants. (Tr. of 6/15/2006 at 3-5.) This Court ultimately sentenced Petitioner to 57 months in custody and three years of supervised release. (Judgment of 6/15/2006; Tr. of 6/15/2006 at 6.)

Petitioner appealed, arguing only that sentencing disparities due to fast track programs were unwarranted under 18 U.S.C. § 3553(a)(6). The Court of Appeals for the Second Circuit rejected this argument and summarily affirmed Petitioner's

3

conviction. See United States v. Bartsch, 252 Fed. Appx. 379 (2d Cir. 2007). Petitioner filed the Petition on April 10, 2008.

## II. Discussion

### A. Vienna Convention Claim

The Vienna Convention provides that when a foreign national "so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other matter. . . . The said authorities shall inform the person concerned without delay of his rights under this subparagraph." Vienna Convention, art. 36.

Bartsch argues that his rights under the Vienna Convention were violated because he was not informed of these rights and was not permitted to contact his consulate. (Petition at 30-31.) Bartsch asserts that this violation "prevented petitioner from perhaps obtaining counsel, a much better counsel, representation, than the court appointed counsel. The court appointed counsel was inefficient, disloyal and inmoral [sic]. The consulate of my country could have appointed a much better one, experienced and knowledgeable counsel . . . and hire private investigators as well as laboratories experts." (Id. at 31.) Even assuming that Bartsch's consulate was not notified of his arrest, these allegations have no merit

4

P 049

because a violation of the Vienna Convention does not entitle Petitioner to relief under Section 2255.

### 1. Procedural Bar Due to Failure to Raise Claims on Appeal

As an initial matter, Bartsch's Vienna Convention argument is procedurally barred due to his failure to raise this claim on appeal. Relief under Section 2255 "is an extraordinary remedy," not a substitute for a direct appeal. See Bousley v. United States, 523 U.S. 614, 621 (1998). As a result, claims made under Section 2255 that were not raised on direct appeal are procedurally barred by default. See id. at 621-22. Claims of violations of the Vienna Convention are subject to the same procedural default rules as other federal law claims. See Sanchez-Llamas v. Oregon, 548 U.S. 331, 360 (2006); Breard v. Greene, 523 U.S. 371, 375 (1998).

A habeas petitioner can avoid this procedural bar only if he "can first demonstrate either cause and actual prejudice or that he is actually innocent." Bousley, 523 U.S. at 622 (internal citations and quotation marks omitted). To demonstrate cause, a petitioner must show that "some objective factor external to the defense" prevented him from raising the claim on appeal. Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must show "actual and substantial disadvantage," not merely the possibility of prejudice. Id. (quoting United States v. Frady, 456 U.S. 152, 170 (1980)) (emphasis in original). Finally, to show actual innocence, a petitioner must show "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623.

5

In the instant case, the Petition contains no explanation for Bartsch's failure to raise this argument on appeal. In addition, the Petition contains no evidence of prejudice. As the Government notes, Petitioner does not explain how private investigators and lab experts could have assisted in defending him against a charge of illegal re-entry, (Gov't Mem. at 17 n. 4), nor does Bartsch provide any evidence to show that his consulate would have provided him with counsel or any other assistance. See Sanchez-Llamas, 548 U.S. at 349 ("Article 36 [of the Vienna Convention] does not guarantee defendants any assistance at all. The provision secures only a right of foreign nationals to have their consulate informed of their arrest or detention-not to have their consulate intervene.") (emphasis in original). Bartsch also does not claim that he is actually innocent. As a result, Bartsch's Vienna Convention argument is barred by procedural default.

2. Merits of the Vienna Convention Claim

Even assuming that this claim was not procedurally barred, however, it would nevertheless fail on its merits. The Second Circuit has held that "the consular notification provision of the Vienna Convention and its related regulations do not create any 'fundamental rights' for a foreign national." United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001). As a result, any violation of the Vienna Convention does not entitle Petitioner to relief under Section 2255. See id. (holding that a violation of the Vienna Convention does not provide a basis for dismissal of an indictment); see also James v. United States, No. 05 CV 8159, 2006

P-049

WL 2850193, at *3-4 (S.D.N.Y. Oct. 5, 2006) (denying relief under Section 2255 for a violation of the Vienna Convention).[1]

B. Ineffective Assistance of Counsel Claims

Bartsch next argues that he received ineffective assistance of counsel, a claim which is not barred by procedural default. See Massaro v. United States, 538 U.S. 500, 504 (2003).

To show ineffective assistance of counsel, a petitioner must show that the attorney's conduct was deficient and that that deficient performance resulted in prejudice. See Strickland v. Washington, 466 U.S. 668, 687 (1984). An attorney's conduct is deficient only where a petitioner can overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To show that the deficiency caused prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. All of Bartsch's ineffective assistance of counsel claims fail under the Strickland test.

---

[1] Petitioner incorrectly relies on Jogi v. Voges, 425 F.3d 367 (7th Cir. 2005), withdrawn and replaced by Jogi v. Voges, 480 F.3d 822 (7th Cir. 2007). Jogi is not on point, as it concerns a private right of action to sue for damages for violations of the Vienna Convention, rather than a right to collaterally attack a final criminal conviction. Moreover, it is not the law in this Circuit. See Mora v. New York, 524 F.3d 183, 188 (2d Cir. 2008) (holding that violations of the Vienna Convention cannot "be vindicated by a private action for damages filed in our courts.").

P-049

1. The Constitutionality of 8 U.S.C. § 1326(b)(2)

Bartsch first argues that his attorney should have challenged 8 U.S.C. § 1326(b)(2), the offense to which he pled guilty, as unconstitutional following Apprendi v. New Jersey, 530 U.S. 466 (2000) and its progeny. 8 U.S.C. § 1326(a) criminalizes the unauthorized reentry of an alien who has previously been deported; in pertinent part, section 1326(b)(2) specifies that any alien "whose removal was subsequent to a conviction for commission of an aggravated felony . . . shall be . . . imprisoned not more than 20 years."

The Supreme Court has ruled, however, that section 1326(b)(2) is constitutional, reasoning "that the subsection is a penalty provision, which simply authorizes a court to increase the sentence for a recidivist." Almendarez-Torres v. United States, 523 U.S. 224, 226-27 (1998). Apprendi held only that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury," and specifically declined to overrule Almendarez-Torres. 530 U.S. at 490 (emphasis added). Almendarez-Torres therefore remains good law. See, e.g., United States v. Ponce-Cruz, 293 Fed. Appx. 96, 98 (2d Cir. 2008) ("We are in no position to overrule the Supreme Court which itself has repeatedly declined to disavow Almendarez-Torres."); United States v. Estrada, 428 F.3d 387, 390-91 (2d Cir. 2005), cert. denied 546 U.S. 1223 (2006); United States v. Mercedes, 287 F.3d 47, 58 (2d Cir. 2002). But see Shepard v. United States, 544 U.S. 13, 27-28 (2005) (arguing that

"the Court should consider <u>Almendarez-Torres</u>' continuing viability") (Thomas, J., concurring in part and in the judgment).

As a result, Bartsch's counsel's failure to challenge the constitutionality of 8 U.S.C. § 1326(b)(2) cannot be said to have fallen below "the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689; see <u>United States v. Abad</u>, 514 F.3d 271, 275-76 (2d Cir. 2008) ("counsel could not therefore have been ineffective for failing to make a motion that would have been futile.").

Bartsch also argues that section 1326(b)(2), even if not unconstitutional on its face, is nevertheless unconstitutional as applied to his case because his indictment did not allege, and the Government did not prove, "that his deportation occurred after conviction for a 'felony' or 'aggravared [sic] felony.'" (Petition at 20.) This argument is likewise foreclosed by <u>Almendarez-Torres</u>. See 523 U.S at 226-27 ("neither the statute nor the Constitution requires the Government to charge the factor that it mentions, an earlier conviction, in the indictment.").

In addition, this argument lacks a basis in fact, as Bartsch's indictment did include his prior aggravated felonies. (<u>See</u> Gov't Mem. Ex. D.) At the plea allocution, Magistrate Judge Levy explained to Bartsch that he was waiving his right to a jury trial where the Government would bear the burden of proving him guilty beyond a reasonable doubt. (Tr. of 11/22/2005 at 9-11.) Under oath, Bartsch told Judge Levy that he had previously been convicted of an aggravated felony and deported. (<u>Id.</u> at 15.) These "[s]olemn declarations in open court carry

9

a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) (holding that the court may rely on sworn statements at plea allocution). Petitioner's admission to the facts alleged in the indictment provided a sufficient factual basis for the Court to find him guilty. See, e.g., United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001).

    2. The Sixteen Level Enhancement

The Court adopted the PSR's recommendation that Bartsch receive a sixteen level enhancement to his total offense level pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i), which provides that "[i]f the defendant previously was deported . . . after a conviction for a felony that is a drug trafficking offense for which the sentence imposed exceeded 13 months . . . increase by 16 levels." (PSR at ¶ 10; Judgment of 6/15/2006.) Bartsch argues that his attorney should have explained to him that he had a right to "accept only part of the respomsibility [sic]" and to submit this enhancement to a jury. (Petition at 13.)

This argument fails because Bartsch did not have a right to submit the enhancement to a jury. See United States v. Dorney, 201 Fed. Appx. 3032 (2d Cir. 2006) (holding that the sixteen level enhancement need not be submitted to the jury) (citing United States v. Vaughn, 430 F.3d 518, 525 (2d Cir. 2005)); United States v. Elliot, 184 Fed. Appx. 89 (2d Cir. 2006) (holding that court may apply sixteen level enhancement without violating Fifth or Sixth Amendment, so long as

10

the statutory maximum is not exceeded) (citing United States v. Sheikh, 433 F.3d 905, 905-06 (2d Cir. 2006)). The 57-month sentence that Bartsch received was well below the statutory maximum of twenty years. See id. While some courts have criticized the sixteen level enhancement as unfairly "double counting" the defendant's prior convictions towards both the substantive offense and the criminal history, the Second Circuit has upheld this enhancement. See United States v. Torres-Echevarria, 129 F.3d 692, 699-700 (2d Cir. 1997). In light of the above, it was not unreasonable for Bartsch's attorney not to raise this argument at sentencing. It is also clear that Bartsch understood the Sentencing Guidelines and the Guideline range that he was facing. (Tr. of 11/22/2005 at 12-13.)

### 3. The Criminal History Calculation

Bartsch next argues that his counsel was ineffective for failing "to object to the presentence report with respect to criminal history." (Petition at 22.) He requests that the Court re-calculate his Criminal History points as three rather than six and his Criminal History Category as II rather than III, (id. at 25-26), due to amendments to U.S.S.G. § 4A1.2(a) and § 4A1.2(c)(1)(A), (id. at 22-23), by Amendment 709, effective November 1, 2007.

As an initial matter, Batsch's counsel cannot be deemed ineffective for failing to challenge the Criminal History calculation based on amendments that became effective in 2007, after Bartsch was sentenced in 2006.

P-049

Furthermore, Section 2255 does not permit the Court to modify a sentence due to a subsequent amendment to the Sentencing Guidelines. See Pichardo v. United States, No. 08 Civ. 8805, 2009 WL 320862, at *2 (S.D.N.Y. Feb. 10, 2009). Even if the Court construes Petitioner's request as a motion for resentencing under 18 U.S.C. § 3582(c)(2), the Court lacks jurisdiction to grant such a motion because Amendment 709 is not retroactive. See United States v. Figueroa, No. 88 Cr 859, 2008 WL 5069079 (S.D.N.Y. Nov. 21, 2008) (denying a 18 U.S.C. § 3582(c)(2) motion because Amendment 709 is not retroactive). The Court has jurisdiction to reduce a sentence only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). A reduction is not consistent with the applicable policy statement when the amendment in question is not listed in U.S.S.G. § 1B1.10(c). See U.S.S.G. § 1B1.10(a)(2)(A). Amendment 709 is not listed in U.S.S.G. § 1B1.10(c).

Moreover, even if the Court had jurisdiction to entertain this request, Amendment 709 does not apply to Bartsch. Bartsch's prior sentences count for the same number of Criminal History points today as they did when he was sentenced in 2006, despite Amendment 709. Currently, § 4A1.2(a)(2) provides that "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense.)" Bartsch's Criminal History included three prior sentences, each of which was separated by an intervening

12

arrest; specifically, Bartsch was arrested on January 3, 1997, February 25, 1998, and July 20, 1998. (PSR ¶¶ 19, 23, 27.)

Amendment 709 also amended § 4A1.2(c)(1)(A), which currently reads: "Sentences for all felony offenses are counted. Sentences for misdemeanor and petty offenses are counted, except as follows: Sentences for the following prior offenses and offenses similar to them . . . are counted only if the sentence was a term of probation of more than one year." None of Bartsch's prior offenses are listed in § 4A1.2(c)(1)(A); in addition, the only sentence of probation that Bartsch received was for three years. Again, therefore, despite Amendment 709, Bartsch's Criminal History remains the same today as it was in 2006.

### 4. The Downward Departure

Finally, Bartsch argues that his counsel was ineffective because he failed to move the Court for a sentence reduction based on Petitioner's family circumstances and likely deportation. (Petition at 26-30.)

On the contrary, Petitioner's attorney argued both in a letter submitted prior to sentencing and at sentencing that the Court should downwardly depart in consideration of Bartsch's family circumstances. (Def. Letter of 6/2/2006; Tr. of 6/15/2006 at 4-5.) While he did not specifically request that the Court depart based on Petitioner's alien status and likely deportation, he did argue that the disparities between this District and "fast track" districts merited a departure, thus Petitioner's alien status and likely deportation were considered by the Court in fashioning

13

P-049

Petitioner's sentence. (See Def. Letter of 6/2/2006; Tr. of 6/15/2006 at 3-4.) Thus, even assuming that Petitioner's counsel was wrong in failing to articulate his argument in this exact manner, Petitioner has not shown that there is a "reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different." Strickland, 466 U.S. at 694. The Court sentenced Bartsch after considering the Guidelines and the factors listed in 18 U.S.C. § 3553(a), particularly his multiple prior arrests for drug-dealing and his multiple illegal re-entries. (Tr. of 6/15/2006 at 6.) The Petition does not call any of these factors into doubt or otherwise prompt the Court to reconsider the exercise of its sentencing discretion.

### III. Conclusion

For the foregoing reasons, the Petition is DENIED in its entirety. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c). The Clerk of Court is directed to close this case.

SO ORDERED.

DATED:
July 30, 2009
Brooklyn, New York

S/SJ
_____
Sterling Johnson, Jr, U.S.D.J.

14